UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
GISSELLE VASQUEZ,

                             Plaintiff,                   Case No. ___21-4620___

    -against-

                                        **COMPLAINT**

CITY OF YONKERS, YONKERS PUBLIC SCHOOL
DISTRICT, ROBERT C. DODSON PUBLIC SCHOOL,
CESAR CHAVEZ PUBLIC SCHOOL, EVELINA MEDINA,    **Jury Trial Demanded**
CHRISTOPHER CASSANO, SANDRA GUZMAN,
and DR. EDWIN M. QUEZADA,
in their personal and professional capacities,

                         Defendants.
------------------------------------------------------------------------X

       Plaintiff GISSELLE VASQUEZ (hereinafter referred to as "Plaintiff" or "Vasquez"), by and through her attorneys, BERLINGIERI LAW, PLLC, as and for her Complaint in this action against the Defendants CITY OF YONKERS, YONKERS PUBLIC SCHOOL DISTRICT, ROBERT C. DODSON PUBLIC SCHOOL, CESAR CHAVEZ PUBLIC SCHOOL, EVELINA MEDINA, CHRISTOPHER CASSANO, SANDRA GUZMAN, and DR. EDWIN M. QUEZADA (collectively referred to as "Defendants"), respectfully alleges as follows:

## NATURE OF CASE

1.    Plaintiff brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. §1983 for violations of her civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States and for violations of New York State Human Rights Law, Article 15 of the Executive Law ("NYSHRL") § 296, *et seq.*, including claims for sexual harassment, sex discrimination, disability discrimination, familial status discrimination, failure to accommodate requests for reasonable accommodations, retaliation, and aiding and abetting discrimination, violations of § 213-c of the

Civil Practice Law and for Victims of Conduct Constituting Certain Sexual Offenses, NY CLS CPLR § 213-c; and state law tort claims for negligence *respondeat superior*, negligent hiring, training and retention, negligent infliction of emotional distress, *prima facie* tort and any other claims(s) that can be inferred from the facts set forth herein.

## JURISDICTION AND VENUE

2.     This action is brought pursuant to 42 U.S.C. §1983, and the First, Fifth and Fourteenth Amendments to the United States Constitution.

3.     Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343 and 1367.

4.     Venue is properly laid in the Southern District of New York under U.S.C. §1391(b), in that this is the District in which the claim arose.

5.     Fees and costs are sought pursuant to 42 U.S.C. § 1988.

## THE PARTIES

6.     At all times relevant to this Complaint, Plaintiff is an individual residing in the County of Westchester, State of New York.

7.     Defendant City of Yonkers was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.     Defendant Yonkers Public School District ("District") is a public K-12 school district duly organized and existing under and by virtue of the laws of the State of New York, and located at 1 Larkin Center, Yonkers, New York 10701.

1.     Upon information and belief, at all times relevant to this Complaint, Defendant District has employed twenty (20) or more employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year and meets the definition of an "employer" under ADA and all applicable state and local statutes.

2.      Upon information and belief, Defendant Robert C. Dodson Public School ("Dodson") is located at 105 Avondale Road, Yonkers, New York 10701.

3.      Upon information and belief, at all times relevant to this Complaint, Defendant Dodson has employed twenty (20) or more employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year and meets the definition of an "employer" under NYSHRL.

4.      Upon information and belief, Defendant Cesar Chavez Public School ("Chavez") is located at 20 Cedar Place, Yonkers, New York 10705.

5.      Upon information and belief, at all times relevant to this Complaint, Defendant Chavez has employed twenty (20) or more employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year and meets the definition of an "employer" under ADA and all applicable state and local statutes.

6.      Upon information and belief, Defendant Evelina Medina ("Medina") is the School Principal at Dodson.

7.      Upon information and belief, at all times relevant to this Complaint, Defendant Medina was and is a resident of the State of New York.

8.      Upon information and belief, Defendant Christopher Cassano ("Cassano") is an Assistant School Principal at Dodson.

9.      Upon information and belief, at all times relevant to this Complaint, Defendant Cassano was and is a resident of the State of Connecticut.

10.     Upon information and belief, Defendant Sandra Guzman ("Guzman") is an Assistant School Principal at Dodson.

11.     Upon information and belief, at all times relevant to this Complaint, Defendant Guzman was and is a resident of the State of New York.

12.     Upon information and belief, at all times relevant to this Complaint, Defendant Quezada was and is the Superintendent of Schools of the Yonkers City School District.

13.     Upon information and belief, at all times relevant to this Complaint, Defendant Dr. Edwin M. Quezada ("Quezada") was and is a resident of the State of New York.

## BACKGROUND FACTS

14.     Plaintiff's sex is female.

15.     Plaintiff's disabilities are asthma, heart murmur, anxiety, and major depression disorder.

16.     Plaintiff's familial status is that Plaintiff is the single mother of a 6-year-old child.

17.     On or about March 16, 2016, the Trustees of the Yonkers Board of Education appointed Dr. Quezada Superintendent of Schools.

18.     On or about September 27, 2013, Plaintiff began working for the District as a School Aide at Saunders Trades and Technical High School.

19.     In or about April 2016, Plaintiff began working as a Clerk I Spanish Speaking for the District at Dodson.

20.     In or about April 2019, Plaintiff was transferred to the position of Data Clerk for the District at Chavez.

21.     During Plaintiff's employment at Dodson, Medina was Plaintiff's supervisor.

22.     On or about May 24, 2018, Medina texted Plaintiff a photo of a man lying in bed in his underwear .  Medina instructed Plaintiff to save the photo of the man in underwear for her.

23.     On or about May 25, 2018, Medina handed Plaintiff her cell phone and asked Plaintiff to take a photo of her.

24.     Medina then proceeded to lower her pants to her ankles, turned around and exposed her buttocks in thong underwear and posed for a photo.

25.     Medina then texted the photos to Plaintiff and asked Plaintiff to help her edit them.

26.     On or about May 29, 2018, Medina texted Plaintiff a photo of a man lying in bed holding his exposed erect penis.

27.     Medina instructed Plaintiff to save the photo of the man's penis for her.

28.     In or about June 2018, Medina instructed Plaintiff to book a hotel room in Yonkers, NY using Plaintiff's debit card.

29.     In or about June 2018, Medina invited Plaintiff and Guzman to happy hour after work. Medina also invited her lover and his brother.  At one point during the happy hour, Medina told Plaintiff that she should date her lover's brother.

30.     Plaintiff felt uncomfortable during this encounter and ultimately told Medina that she had to leave.

31.     Plaintiff was shocked, intimidated, uncomfortable, and felt unsafe in the workplace due to Medina's conduct.

32.     In or about May/June 2018, Plaintiff complained to supervisor Clerk Theresa Bellino ("Bellino") about inappropriate things going on. Rather than set up a meeting, Bellino merely responded to just put in a request for transfer.

33.     On or about August 9, 2018, because of Medina's conduct, Plaintiff sent a letter to Human Resources requesting a transfer but received no response.

34.     In or about September 2018, Medina instructed Plaintiff to buy her lingerie during her lunch break.  Medina told Plaintiff that she had a date later in the city and that she wanted Plaintiff

to buy her some new lingerie to wear. Medina gave Plaintiff approximately fifty dollars ($50.00) and told Plaintiff to go to Romantic Depot (an adult store) and buy black lingerie.

35.      Plaintiff felt was very intimidated and uncomfortable regarding this encounter and decided that she was not going to purchase anything for Medina. After Plaintiff's lunch break, Plaintiff returned the money to Medina and told her that she could not find anything.

36.      In or about September 2018, Medina told Plaintiff in sexually explicit detail what she wanted to do and what she did with her lover.

37.      In or about September 2018, Medina forcefully grabbed Plaintiff by the neck and throat to show her what she wanted to do with her lover.

38.      Medina grabbed Plaintiff's neck and throat in an offensive and unwanted manner.

39.      Medina grabbed Plaintiff's neck and throat in order to inflict or negligently inflict emotional distress to Plaintiff by simulating rough sexual acts with her at school.

40.      In or about the fall of 2018, Plaintiff was folding shirts for the kindergarten class. Medina came into the room and started to also fold shirts. Medina told Plaintiff in sexually explicit detail about her sexual encounters with her lover.

41.      In or about the fall of 2018, Plaintiff walked into Medina's office to give Medina a message from a school parent. During this meeting, Guzman was also present. Guzman told Plaintiff, "You don't really look like a sexual person." Guzman also asked Plaintiff, "How many times a week do you have sex?" When Plaintiff did not respond to Guzman's question, Guzman began to laugh.

42.      In or about October 2018, Medina showed Plaintiff her cellphone and told Plaintiff to read sexually explicit text messages between Medina and her lover.

43.      On more than one occasion, Medina showed Plaintiff sexually explicit messages between Medina and Medina's lover.

44.    On more than one occasion, Medina showed Plaintiff sexually explicit photos between Medina and Medina's lover.

45.    On more than one occasion, Medina made comments about her lover's penis size and how it satisfied her more despite being smaller than her husband's penis size.

46.    In or about the fall of 2018, Plaintiff interviewed for a position at Roosevelt High School ("Roosevelt") and met with the principal of the high school Edward Dechant ("Dechant") for an interview.

47.    On the day Plaintiff interviewed for a position at Roosevelt High School, Plaintiff saw School Aide Marcus Hunte ("Hunte") and complained to him about Medina.

48.    The following day, Medina approached Plaintiff and asked her why she applied for a transfer at Roosevelt and why she wanted to get out of here.  Medina told Plaintiff that she spoke to Dechant and told him not to hire Plaintiff because she did not want him taking her away.

49.    In or about February 2019, Cassano asked Plaintiff, "Have you ever done drugs?" Plaintiff responded, "No."  Cassano then asked Plaintiff, "How often do you have sex?"  Plaintiff responded, "I won't answer that" and walked away to the bathroom.

50.    In or about March 2019, Cassano began to pay undue attention to Plaintiff and began to follow her at school.

51.    In or about March 2019, Plaintiff complained to school district custodian Rene Acevedo ("Acevedo") about Cassano and how he made her uncomfortable.  On at least one occasion in March 2019, Complainant asked Acevedo to stay near her office so that she did not have to be alone with Cassano.

52.    In or about March 2019, Plaintiff was in the main office working the after-school program. Medina called the main office and Plaintiff answered the phone.  Guzman was in the car with

Medina. During the call, Medina asked, "Which administrator is working with you today?" Plaintiff responded that it was Cassano working with her. Medina told Plaintiff, "You should give him some". Plaintiff then asked Medina, "Give him what?" Medina responded, "You know what" referring to "give him some" as a sexual innuendo. Plaintiff heard Guzman laughing.

53.     In or about March 2019, Plaintiff complained to social worker Bethzaida Curbello ("Curbello") about Cassano. Plaintiff also asked Curbello if she could find out about Plaintiff's request for transfer. About a week later, Curbello told Plaintiff that there are no openings and nothing she could do.

54.     Upon information and belief, Curbello is Clerk Nellie Diaz-Curbello's ("Diaz-Curbello") daughter-in-law.

55.     On or about March 29, 2019, Cassano leaned in and attempted to kiss Plaintiff on the lips in the back of the main office while Plaintiff was washing a plate.

56.     Plaintiff backed away from Cassano to avoid being kissed by him and asked him what he was doing.

57.     After Plaintiff backed away from Cassano, Cassano made a second attempt to kiss Plaintiff and again leaned in to kiss Plaintiff.

58.     Plaintiff again backed away from Cassano and asked him what he was doing. Plaintiff then walked away from Cassano.

59.     Plaintiff was shocked, intimidated, uncomfortable, and felt unsafe in the workplace due to Cassano's conduct.

60.     On or about April 10, 2019, Plaintiff complained to Medina about Cassano attempting to kiss her.

61.     On or about April 11, 2019, Plaintiff filed a complaint with Human Resources.

62.     On or about April 17, 2019, Plaintiff sent an email to the Superintendent of Schools for the District Edwin Quezada ("Quezada") complaining about feeling extremely uncomfortable at Dodson and requested a transfer.  In response, Quezada merely replied, "Thank you."

63.     On or about April 25, 2019, Plaintiff sent an email to Commissioner of Human Resources Theresa Forget ("Forget") requesting a meeting to discuss her complaints.

64.     On or about April 25, 2019, Forget responded that she was unavailable and to let her know if someone else in HR can assist.

65.     On or about April 26, 2019, Plaintiff learned that a teacher at Dodson had a copy of her complaint on her cell phone and was showing it to other employees.  Plaintiff brought this concern to the attention of Human Resources Equal Employment Opportunity and Training Administrator Robert J. Voorheis ("Voorheis") as she was concerned about her privacy, safety and retaliation and reached out to follow up with Voorheis about the status of her complaint. However, Voorheis did not respond or address this issue with Plaintiff.

66.     In or about April 2019, following Plaintiff's complaints, Defendants retaliated against Plaintiff by transferring Plaintiff to Chavez to fill a different position with a different schedule and different job title.

67.     When Plaintiff worked at Chavez her job title was Data Clerk and her schedule was approximately 8:15 am to 3:45 pm.  As Data Clerk, Plaintiff was responsible for Data Clerk job duties as well as prior Clerk I Spanish Speaking job duties.

68.     The hours were difficult because of Plaintiff's childcare obligations. Plaintiff complained to Bellino about the hours and also told her that there were inappropriate things that were going on at the school that she wanted to discuss with her. Theresa merely responded to just put a request for transfer.

69.     Plaintiff also complained to Diaz-Curbello who took over for Bellino's position.  Plaintiff complained about how the change in work schedule was affecting her childcare obligations.  Diaz-Curbello merely responded that there were no openings right now.

70.     In 2019, Plaintiff sought a transfer to the position Clerk II Spanish Speaking so she took and passed a civil service exam.  Plaintiff noticed others were being offered the Clerk II Spanish Speaking position and others were being moved up on the list to be offered the position.  However, Plaintiff noticed that her name was never moved up on the list and she was never offered the position.

71.     In 2019, Plaintiff asked Diaz-Curbello about her request for transfer.  Diaz-Curbello merely stated that there are no openings right now.

72.     In or about April 2019, Plaintiff complained to Bellino about the new work schedule. Bellino merely responded if something comes up I'll let you know.

73.     In or about April 2019, Cassano and Plaintiff discussed the incident in which Cassano attempted to kiss Plaintiff.  Cassano admitted to what he did and tried to apologize to Plaintiff.

74.     In or about April 2019, Plaintiff complained to union representative Lionel Turner ("Turner") about Medina and Cassano.  Turner told Plaintiff that he forwarded Plaintiff's complaints to Quezada.

75.     In or about early May 2019, Medina had a meeting with Plaintiff to discuss her complaint regarding Cassano.  Medina typed up Plaintiff's complaint and sent it to Plaintiff and HR.

76.     On or about early May 2019, the day after Medina's meeting with Plaintiff, Voorheis set up a meeting with Plaintiff to discuss the incident.

77.     On or about May 22, 2019, Plaintiff sent an email to Forget again requesting a meeting to discuss her complaints.

78.     On or about May 24, 2019, rather than set up a meeting with Plaintiff, Forget told Plaintiff that she was not free on Wednesday and to either call or to work with Voorheis regarding Plaintiff's complaints.

79.     In or about June 2019, Plaintiff complained to the school nurse Marlyne Fernandez ("Fernandez") about the sexual harassment caused by Medina Cassano and Guzman.

80.     In or about July 2019, Plaintiff began treating with a psychiatrist due to the sexual harassment caused by Medina, Cassano and Guzman.

81.     On or about August 26, 2019, Plaintiff sent an email to Forget again requesting a meeting to discuss her complaints. However, Forget merely responded that she was out of the office until September 3rd.

82.     On or about November 19, 2019, Plaintiff sent a letter to Voorheis to again follow up with Human Resources for a status of her complaint and the privacy issues she raised concerning her complaint being passed to other employees.

83.     On or about November 21, 2019, Voorheis merely responded: "Sorry for the delay in responding to your inquiry. The case you were inquiring about was deemed founded. The Department of Human Resources considers this investigation completed and closed."

84.     Plaintiff felt unsupported at the workplace and felt the investigation was not adequate.

85.     On numerous occasions, Plaintiff requested meetings with HR but her requests were ignored.

86.     The transfer and schedule change presented issues for Plaintiff due to her familial status and childcare obligations.

87.     In or around March 2020, due to the COVID-19 pandemic, Plaintiff and other employees were required to work remotely from home.

88.     On or about August 25, 2020, Plaintiff requested a reasonable accommodation to work remotely from home due to her disabilities of asthma, heart murmur and anxiety.

89.     On or about August 25, 2020, Plaintiff provided Human Resources representative Ted Vonhoene ("Vonhoene") with a doctor's note in support of her reasonable accommodation request.

90.     However, HR never followed up with Plaintiff on her work from home request and did not engage in the interactive process.

91.     On or about August 27, 2020, Defendants ultimately denied Plaintiff's request for a reasonable accommodation.

92.     On or about September 1, 2020, Plaintiff required leave under the Family First Coronavirus Response Act ("FFCRA") and Defendants approved her FFCRA from September 1, 2020 through November 23, 2020.

93.     In or about November 2020, Plaintiff requested Family Medical Leave of Absence ("FMLA") due to childcare obligations and Defendants granted her FMLA leave time.

94.     Due to the COVID-19 pandemic, Plaintiff's child was required to do full-time remote learning.  As a result, Plaintiff had no choice but to request leave.

95.     During Plaintiff's employment, Defendant Medina sexually harassed Plaintiff.

96.     During Plaintiff's employment, Defendant Cassano sexually harassed Plaintiff.

97.     During Plaintiff's employment, Defendant Guzman sexually harassed Plaintiff.

98.     Following Plaintiff's complaints, Defendants failed to investigate Plaintiff's complaints and failed to take appropriate corrective action.

99.     Yonkers City School District HR failed to investigate and follow up with Plaintiff's complaints.

100.    Superintendent Quezada had a duty to investigate sexual harassment in the workplace and failed in his response to Plaintiff's complaints about being uncomfortable at the workplace.

101.    Upon information and belief, Defendants retaliated against Plaintiff based upon sex, sexual harassment, disability, familial status, and opposed discrimination/retaliation.

102.    All of the sexual touching of Plaintiff by Defendants Medina (rough sex neck and throat grab simulation) and Cassano (multiple attempted kissing) was unwanted and are violations subject to section § 213-c of the Civil Practice Law and for Victims of Conduct Constituting Certain Sexual Offenses, including but not limited to, at the very least, Forcible Touching [1], CPL § 130.52 under New York's Criminal Penal Law.

103.    Plaintiff suffered extreme emotional distress after Defendants' retaliatory actions.

104.    Defendants Medina, Cassano and Guzman treated Plaintiff in such an opprobrious manner due to her sex and sought to take advantage of her due to her sex.

105.    Defendant Quezada failed to investigate Plaintiff's complaints and denied Plaintiff's transfers due to her sex.

### AS A FIRST CAUSE OF ACTION
### FOR VIOLATIONS OF 42 U.S.C. § 1983
### (MUNCIPAL DEFENDANTS)

106.    Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

---

[1] § N.Y. Criminal Penal Law Section 130.52 **Forcible touching**. A person is guilty of forcible touching when such person intentionally, and for no legitimate purpose: 1. forcibly touches the **sexual or other intimate parts of another person** for the purpose of degrading or abusing such person, or for the purpose of gratifying the actor's sexual desire; or 2. subjects another person to sexual contact for the purpose of gratifying the actor's sexual desire and with intent to degrade or abuse such other person while such other person is a passenger on a bus, train, or subway car operated by any transit agency, authority or company, public or private, whose operation is authorized by New York state or any of its political subdivisions. For the purposes of this section, forcible touching includes squeezing, **grabbing** or pinching. Forcible touching is a class A misdemeanor. (emphasis added).

107.    All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

108.    All of the aforementioned acts deprived Plaintiff of her rights, privileges and immunities guaranteed to citizens of the United States by the First, Fifth, and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

109.    The acts complained of were carried out by the aforementioned individual Defendants in their capacities as City of Yonkers School District employees, with all the actual and/or apparent authority attendant thereto.

110.    All acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of Yonkers and the City of Yonkers School District, all under the supervision the Superintendent of Schools, Defendant Quezada and all lower ranking subordinates.

111.    Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

112.    The acts complained of deprived Plaintiff of her rights to be free of sexual harassment and unwanted sexual advances and touching the workplace at the City of Yonkers School District.

113.    Defendant City of Yonkers and City of Yonkers School District, deprived Plaintiff equal protection under the law based on her sex.

114.    Plaintiff has suffered damages as a result of said violations.

## AS A SECOND CAUSE OF ACTION
## FOR VIOLATIONS OF 42 U.S.C. § 1983
## MONELL LIABILITY
## (MUNCIPAL DEFENDANTS)

115.    Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

116.     At all times alleged herein, the individually named employees and named Defendants were employed by City of Yonkers and City of Yonkers School District, acting on its behalf, and within the scope of their employment.

117.    At all times alleged herein, the individually named employees and named Defendants failed to enforce the City of Yonkers and City of Yonkers School District EEO Policy and Code of Conduct when Plaintiff complained about sexual harassment, discrimination, her hostile work environment, cronyism, retaliation and corruption.

118.    At all relevant times the individually named Defendants/employees violated Sec. 1983 and the U.S. Constitution when they sexually harassed Plaintiff and failed to do anything about her complaints and then retaliated against her and denied her request for reasonable accommodation.

119.    Throughout Plaintiff's employ, Defendants executed official policies: where discrimination complaints were unaddressed; where employees were allowed to retaliate against other employees for engaging in protected activities with impunity; and where employees were also allowed to retaliate against employees for reporting sexual harassment.

120.    At all times alleged herein, the individually named Defendants possessed final decision making authority and were policymakers as defined by 1983 and the City Charter.

121.    Defendants' actions described above directly and proximately have caused and continue to cause Plaintiff to suffer damages.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## NEW YORK STATE LAW (AGAINST ALL DEFENDANTS)

122.    Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

123.    Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

124.    Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex, subjecting her to sexual harassment, and causing a hostile work environment based on sex and denying her accommodations based on disability and familial status.

125.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

## AS A FOURTH CAUSE OF ACTION
## FOR RETALIATION UNDER
## NEW YORK STATE LAW (AGAINST ALL DEFENDANTS)

126.    Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

127.    New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

16

128.     Defendants engaged in an unlawful discriminatory practice by wrongfully retaliating against Plaintiff.

### AS A FIFTH CAUSE OF ACTION
### FOR AIDING AND ABETTING UNDER
### NEW YORK STATE LAW (AGAINST ALL DEFENDANTS)

129.     Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

130.     New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

131.     Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

### AS A SIXTH CAUSE OF ACTION
### FOR VIOLATION OF § 213-C OF THE CIVIL PRACTICE LAW AND FOR
### VICTIMS OF CONDUCT CONSTITUTING CERTAIN SEXUAL OFFENSES, NY
### CLS CPLR § 213-C (AGAINST DEFENDANTS MEDINA AND CASSANO)

132.     Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

133.     In order for Plaintiff to plead a violation of CPLR Sec. 213(c) the conduct complained of by the Plaintiff of the Defendants must fall into the category of a "sexual offense" as defined by the New York Criminal Penal Law and have suffered damages as a result.

134.     Defendants Medina's and Cassano's sexual harassment was not limited to comments, they made overt acts to make unwanted sexual contact with Plaintiff, is considered Forcible Touching under New York Penal Law Section 130.52.

135.     As a direct and proximate result of defendants' Medina and Cassano violations of CPLR Sec. 213(c) by their intentional acts, recklessness and wanton disregard, Plaintiff suffered and

sustained injuries and damages including: emotional pain, suffering, embarrassment, shame, humiliation, inconvenience, mental anguish, loss of enjoyment of life, medical bills, impairment of her personal and professional reputation, damage caused by the Plaintiffs loss employment, and other pecuniary and non-pecuniary losses suffered.

136.    Plaintiff continues to suffer from emotional distress as a result to date.

**AS A SEVENTH CAUSE OF ACTION
FOR NEGLIGENCE RESPONDEAT SUPERIOR
(AGAINST MUNICIPAL DEFENDANTS)**

137.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

138.    The above described Municipal Defendants and individual Defendants breached their of maintaining a safe and harassment free workplace and keeping the protection and safety of employees like Plaintiff when they allowed their employees Defendants Medina Cassano and Guzman to sexually harass Plaintiff and solicit her to perform sex acts against her will or face adverse action and not investigate complaints.

139.    Defendants are vicariously liable for the physical and emotional injuries suffered by the Plaintiff due to the intentional, deliberate, malicious and reckless assault, threat, affront, abuse, insult and harassment of the Plaintiff by the Defendants Medina, Cassano and Guzman under the doctrine of respondent superior.

140.    As a result of this experience, Plaintiff is afraid of the safety of her and her family's lives and is afraid for her personal safety, has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestation of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.

## AS AN EIGHTH CAUSE OF ACTION
## FOR NEGLIGENCE RESPONDEAT SUPERIOR
## (AGAINST MUNICIPAL DEFENDANTS)

141.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

142.    The Municipal Defendants are responsible for the training and supervision of all employees, agents, contractors and subcontractors who manage the premises including but not limited to the schools and employee/patron safety and have a duty to stop/prevent criminal sexual acts from occurring on the premises.

143.    The actions of Defendants Medina,  Cassano and Guzman are the responsibility of and are imputed to and binding upon the Municipal Defendants.

144.     The Municipal Defendants have a duty to prevent employees/servants/agents, including Defendants Medina, Cassano and Guzman from acting or engaging in unlawful and/or tortious conduct.

145.    The Municipal Defendants' negligence in hiring, supervising and retaining employees/servants/agents that engaged in tortious and/or otherwise unlawful conduct was the direct and proximate cause of Plaintiff's severe injuries.

146.    Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestation of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.

## AS A NINTH CAUSE OF ACTION
## FOR NEGLIGENCE RESPONDEAT SUPERIOR
## (AGAINST DEFENDANTS MEDINA,CASSANO AND GUZMAN)

147.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

19

148.   As described above, Defendants Medina, Cassano and Guzman knew or should have known that they intended to cause Plaintiff emotional distress.

149.   Defendants Medina, Cassano, and Guzman's conduct was extreme and outrageous.

150.   Plaintiff was in the zone of danger from Defendants Medina, Cassano, and Guzman's actions, and it could be foreseeable that their actions could or would cause emotional distress upon the Plaintiff.

151.   Plaintiff was in the zone of danger created by Medina, Cassano and Guzman when they negligently inflicted emotional distress unto her.

152.   Defendants Medina, Cassano and Guzman in perpetrating the above-described conduct, inflicted emotional distress as a result of terminating Plaintiff.

153.   Defendants Medina, Cassano and Guzman actions were harmful and offensive to the Plaintiff and would be harmful and offensive to any reasonable person.

154.   Defendants' actions did in fact cause the Plaintiff to suffer severe emotional distress.

155.   As a further result of the conduct of the Defendant, the Plaintiff had been and, in the future will be unable to enjoy all of those of life's activities.

## AS A TENTH CAUSE OF ACTION
## FOR NEGLIGENCE RESPONDEAT SUPERIOR
## (AGAINST MEDINA, CASSANO AND GUZMAN)

156.   Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

157.   Defendants commenced a pattern of reckless, negligent, discriminatory, sexist, harassing and retaliatory proceedings against the Plaintiff culminating in the termination of Plaintiff after she complained about severe and pervasive sexual harassment at the workplace.

158.    As a direct and proximate result of Defendants' tortious conduct, Plaintiff has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestation of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.

## DEMAND FOR TRIAL BY JURY

159.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

a.      A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned federal and New York State laws;

b.      Awarding Plaintiff all damages;

c.      Awarding Plaintiff compensatory damages;

d.      Awarding Plaintiff punitive damages;

e.      Awarding Plaintiff consequential damages;

f.      Awarding Plaintiff statutory damages;

g.      Awarding Plaintiff costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

h.      Pre-judgment and post-judgment interest, as provided by law; and

i.      Granting Plaintiff further relief as this Court finds necessary and proper.

Dated:  May 24, 2021
New York, New York

                                        Respectfully submitted,


                        By:     *Christopher J. Berlingieri*
                                ───────────────────────────
                                CHRISTOPHER J. BERLINGIERI, ESQ.
                                (CB 1988)
                                MELISSA ALEXIS RODRIGUEZ, ESQ
                                (MR 1420)
                                BERLINGIERI LAW, PLLC
                                *Attorney for Plaintiff*
                                244 Fifth Avenue, Suite F276
                                New York, New York 10001
                                Tel.:   (347) 766-5105
                                Fax:    (914) 730-1044
                                Email: cjb@nyctlaw.com a
                                Email: melissa@nyctlaw.com